(Decided February 10th, 1898).

WILLIAM JACKSON *vs.* STATE OF MARYLAND.

*Constitutional Law—Courts of Baltimore City—Sittings of Criminal Court in Two Divisions.*

Constitution, Art. 4, sec. 32, directs that the Judges of the Supreme Bench of Baltimore City shall provide for the holding of the Courts established in that city "by the assignment of one or more of their number to each of said Courts who may sit either separately or together in the trial of cases * * * and the Judge or Judges so assigned to the said several Courts shall when holding the same have all the powers and exercise all the jurisdiction which may belong to the Court so being held." *Held,* that under this provision the Supreme Bench has power to assign two Judges to the Criminal Court, each to sit separately with a separate jury for the trial of cases.

Appeal from the Criminal Court of Baltimore.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and PEARCE, JJ. (Jan. 26, 1898).

*Robert M. McLane, Jr.,* for the appellant.

*Henry Duffy, State's Attorney,* and *W. Calvin Chesnut* (with whom was *Harry M. Clabaugh, Attorney-General,* on the brief ), for the appellee.

FOWLER, J., delivered the opinion of the Court.

The traverser was indicted in the Criminal Court of Baltimore for murder. Subsequent to the finding of this indictment, JUDGE DOBLER was assigned by the Supreme Bench of Baltimore City to that Court and JUDGE STOCKBRIDGE was by the same authority also assigned to the same Court with a jury to sit separately from JUDGE DOBLER for the January term and until further ordered, as an additional Judge for the said Court. It will thus be seen that the Criminal Court of Baltimore has been in effect divided by the Supreme Bench into two parts, which for convenience have been designated part 1 and part 2. It is contended by the appellant, the traverser, that no warrant can be found in the Constitution for such division, while the State contends that by the true construction of section 32 of Article 4 of the Constitution of Maryland, each part or the Judge holding the same has all the jurisdiction and power conferred upon the Criminal Court of Baltimore by the Constitution of this State. The question thus presented is the only one before us on this appeal. We will briefly consider it, having already announced our conclusion, namely, that the trial of the traverser had in Part 2 of the Criminal Court before JUDGE STOCKBRIDGE and a jury was quite as regular and that the judgment rendered against him is quite as conclusive as if he had been tried and convicted in the Criminal Court itself.

In order to justify this conclusion it seems to be only necessary to examine section 32 of Article 4 of the Constitution.

By this section it is provided that the Judge or Judges assigned to each of the Courts in Baltimore City " may sit either separately or together in the trial of cases "—and that when " so assigned " to the several Courts such Judge:

or Judges shall have all the powers and exercise all the jurisdiction which may belong to the Court so being held. It would seem to be a perfectly clear construction upon the language itself, to say that the Judges " so assigned " to the Criminal Court may sit either together in one Court-room, with one jury, or separately in different rooms, each with a jury and with all the power and jurisdiction they possessed when they sit together. But when we know, as we do, that the object was to provide more Courts as well as more Judges in order that more cases could be disposed of, it becomes, we think, apparent that the plain meaning of this section is that the Supreme Bench should have power, whenever necessary in its judgment the public interest requires it, not to create new Courts, but to divide into parts the Courts already created by the Constitution—and to assign to such sub-divisions the additional Judges elected and to be hereafter elected under section 39 as amended by the Act of 1892.

Such has been the construction given to this section of the Constitution by the Supreme Bench of Baltimore for several years. And we believe it was generally understood when the constitutional amendment of 1892 was adopted, that its object was to facilitate the trial of cases in Baltimore by increasing the number of Judges without the additional expense of new Courts and clerks.

It was urged with earnestness and ingenuity that a Court is necessarily a unit and can only be divided into parts by an amendment or express provision of the Constitution. In answer to this argument it may be said first, that the Baltimore County Court, prior to 1851, sat in Baltimore not as a unit, but in several parts. The late Mr. Crisfield, a member of the Constitutional Convention of 1851, said : " You have, by a practice which has grown up in the city of Baltimore, to meet the exigencies of business, Baltimore County Court severed into three distinct tribunals. You have one Judge in one room performing the common law jurisdiction ; you have another in another room presiding

over appeal cases ; and another in a third room, transacting the chancery business." Nor is it unusual even under the system now prevailing in the circuits outside of Baltimore to see a similar division of the Circuit Courts in some of them when there is a press of business. In one room one of the Judges may be sitting trying criminal or civil cases with or without a jury—and in another room in the same building another Judge of the same Court may be holding a session to dispose of equity business. As we have seen, this practice prevailed even before 1851—and it certainly has continued in some of the circuits, especially in those circuits where there is, as in Baltimore City, such a press of business in the Courts, that it is the only practical and economical way in which the overcrowded dockets can be disposed of. But if the contention of the appellant should prevail, and his theory of the absolute unity of Courts should be adopted, such a practice would be as impossible now as it was supposed to be before the adoption of the Constitution of 1851.

In view of this practice, and of the well known object the people had in view in adopting the constitutional amendment of 1892, providing for the election of additional Judges for Baltimore City, we are all of opinion that the appellant's position cannot be maintained. The Constitution is not to be construed in a technical manner, but in ascertaining its meaning, we are to consider the circumstances attending its adoption, and what appears to have been the understanding of the people when they adopted it. *Bandel* v. *Isaacs*, 13 Md. 202; *Mayor, &c.*, v. *State*, 15 Md. 376. But in the second place, if it be necessary to have an express constitutional provision here in Maryland, where, as we have seen, our Courts for many years, when composed of more than one Judge have been sitting in several parts, we have such a provision now in sec. 32 of Art. 4th.

It was also suggested that if there is to be more than one Judge having criminal jurisdiction in Baltimore, the difficulty would arise as to which one of them is to exer-

cise the important power of appointing a State's attorney in case of vacancy by death, &c., as provided by section 11 of Art. 4. This section confers the power of appointment upon the Judge of the county or city having criminal jurisdiction in the county or city in which such vacancy shall occur, &c. But ever since the Constitution of 1867 has been in force there have been three Judges in each circuit, either one of whom has had criminal jurisdiction in each county. But vacancies in the office of State's attorney have been filled many times in the various counties, without difficulty or question. When sec. 11 of Art. 4 was first adopted the State was sub-divided into a large number of circuits, and there was a Judge appointed for each circuit, and the same section relating to appointment of State's attorneys appears to have been retained without material change in the Constitution of 1864, and the present one. Under the former Constitutions of 1851 and 1864, of course there could be no difficulty in ascertaining the appointing power in case of vacancy in the office of State's attorney, for there was one Judge in each county having criminal jurisdiction. Under the present Constitution, although there are three Judges having equal power and jurisdiction in each county, such appointments have been made by the majority of the Judges having criminal jurisdiction—or by the Judge who happened to be sitting alone, with the assent of one or both of the others. But, independent of this suggestion and even if there could be supposed to be a serious question now raised as to the practical construction of section 7 of Article 5 in the absence of any such difficulty during an experience of thirty years, yet, as was said in *Cantwell* v. *Owens*, 14 Md. 215, "where the Constitution speaks in plain language in reference to a particular matter, Courts have no right to place a different meaning on the words employed because the literal interpretation may happen to be inconsistent with other parts of the instrument in relation to other subjects." Therefore whatever difficulty may be supposed to exist in reconciling

the provisions of section 32 of Article 4 or of section 21 of the same article relating to Circuit Courts with the provisions of section 7 of Article 5 relating to appointment of State's attorneys the plain and literal meaning of the former sections must not be sacrificed. It certainly has never been suggested that there was or could be any doubt in regard to the construction of section 21 of Article 4, relating to Circuit Courts, and yet it, as we have seen, is quite as much in conflict with sec 7, as is section 32, as now construed.

For these reasons, and without further elaboration, the judgment appealed from has been heretofore

*Affirmed.*

( Decided *per curiam* January 28th, 1898 ; the foregoing opinion being filed February 10th, 1898).