# HUGH A. McMULLEN

## *vs.*

# JAMES S. SHEPHERD.

*Commissioner of Land Office: compensation; fees not to be retained; Chapter 318 of Acts of 1900, unconstitutional.*

Under Sections 4 and 5 of Article 7 of the Constitution, the Commissioner of the Land Office is to make a semi-annual report of all the fees of his office, both as Commissioner of the Land Office and as Keeper of the Chancery Records, to the Comptroller of the Treasury; and, under those sections, fees collected are not to be retained as any part of his compensation.                                              p. 163

The Legislature may place additional duties upon the Commissioner of the Land Office, but can not allow him to retain any of the fees as additional compensation; and Chapter 318 of the Acts of 1900, Section 13 of Article 54 of the Code, is unconstitutional.                                          p. 163

*Decided June 20th, 1918.*

Appeal from the Circuit Court for Anne Arundel County. (Moss, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Albert C. Ritchie,* the *Attorney-General,* for the appellant.

*Jos. C. France* and *Edgar Allan Poe,* for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

James S. Shepherd, Land Commissioner of the State of Maryland, filed his petition praying that Hugh A. McMullen, Comptroller of the State of Maryland, be directed to issue his warrant upon the Treasury of the State of Maryland in favor of the said petitioner in the amount of twenty-five per cent (25%) of the moneys paid by the petitioner into the Treasury, as shown by accounts filed by him with the Comptroller on the 31st day of March, and on the 30th day of September, 1917. The Comptroller filed an answer to the said petition denying that the petitioner was entitled to the twenty-five per cent. (25%) of moneys referred to in his petition, and further averring that Chapter 318 of the Acts of the General Assembly of Maryland of 1900, codified as section 13 of Article 54 of the Annotated Code of Maryland, upon which alone the petitioner based his alleged right to the writ of mandamus, was unconstitutional, null and void so far as the same provides that "25% of such moneys so received the Treasurer shall pay over on warrant of the Comptroller semi-annually to the Commissioners of the Land Office."

The petitioner demurred to the answer and upon the Court overruling the demurrer, the writ was ordered issued, and this appeal taken. This appeal brings up for decision the right of the land commissioners to receive, by way of compensation, fees of his office in addition to the salary provided by the Constitution.

The only question involved, is whether Chapter 318 of the Acts of 1900 is obnoxious to the Constitution of Maryland, and therefore void. It is a well settled rule that "The Legislature has all power, except such as is expressly denied to it by the State or Federal Constitution." *Thrift* v. *Laird,* 125 Md. 70.

The constitutional provisions relating to the Land Commissioner are found in sections 4 and 5 of Article 7, and are as follows:

"Sec. 4. There shall be a Commissioner of the Land
Office, who shall be appointed by the Governor, by and
with the advice and consent of the Senate, who shall
hold his office during the term of the Governor, by
whom he shall have been appointed, and until his suc-
cessor shall be appointed and qualified. He shall per-
form such duties as are now required of the Commis-
sioner of the Land Office, or such as may hereafter be
prescribed by law, and shall also be the Keeper of the
Chancery Records. He shall receive a salary of one
thousand, five hundred dollars per annum, to be paid
out of the Treasury, and shall charge such fees as are
now, or may be hereafter, fixed by law. He shall
make a semi-annual report of all the fees of his office,
both as Commissioner of the Land Office, and as
Keeper of the Chancery Records, to the Comptroller
of the Treasury, and shall pay the same semi-annually
into the Treasury."

"Sec. 5. The Commissioner of the Land Office shall
also, without additional compensation, collect, arrange,
classify, have charge of, and safely keep all papers,
records, relics and other memorials connected with the
early history of Maryland, not belonging to any other
office."

The Constitution of 1851, section 6 of Article 7, provided
that the commissioner should sit as judge of the Land Office
and should receive a salary therefor the sum of two hundred
dollars per year and should retain for the performance of
the other duties of his office, as compensation, the fees re-
ceived. By Chapter 415 of the Acts of 1853, and Chapter
149 of the Acts of 1854, the commissioner was authorized to
receive fees for recording papers and proceedings in land
cases, and further to deduct as his compensation twenty-five
per cent (25%) from all moneys on account of public lands,
the remaining seventy-five per cent (75%) to be paid to the
State. By Chapter 208 of the Acts of 1862 the commissioner
was made the custodian of the records of the Court of Chan-
cery and was paid a salary of $500 per annum.

As we have seen from a perusal of the present constitutional provision relating to this office, it is apparent that somewhere between the time of the adoption of the Constitution of 1851 and the Constitution of 1867 it changed from a fee office to a salary office and we will find that this change was made by the framers of the Constitution of 1864 and continued with slight modifications in the Constitution of 1867.

In construing the Constitution we are to consider the circumstances attending its adoption and what appears to have been the understanding of the people when they adopted it, and one of the useful and most helpful sources is the debates of the Convention. *Bandel* v. *Isaacs,* 13 Md. 202; *Baltimore City* v. *State,* 15 Md. 376; *Bonsal* v. *Yellott,* 100 Md. 481; *Jackson* v. *State,* 87 Md. 191.

According to the *Debates of the Maryland Constitutional Convention of 1864,* as found in Volume 1, at page 163, the Committee on Civil Offices made a report to the Convention in which they recommended that the Land Commissioner should be elected by the people for the term of six years, and should receive a salary of eighteen hundred (\$1800) dollars, and should turn all of the fees of his office into the treasury.

On page 1089 of the second volume of the *"Debates,"* the section referring to the Land Office was first taken up for debate. The section was read and the President of the Convention said:

> "The President: 'I have been requested by the Commissioner of the Land Office to state to the convention that the salary fixed in this section does not amount to what he actually receives at the present time. I think he said the amount he now receives was not less than two thousand dollars. I make this statement for the consideration of the convention at his request.'
>
> "Mr. Briscoe: 'Does that include the compensation he receives for performing the duties of Keeper of the Chancery Records?'

"The President: 'My understanding was that it applied to both offices.'

"Mr. Daniel: 'He referred a petition to us on that subject, asking that his salary be fixed, instead of giving him fees. I wish to say further that I think the report of the Commissioner of the Land Office shows that some years his compensation has gone down as low as $1,500 or $1,600; on other years it has gone up as high as $2,700 or $2,800. It shows that his fees are now decreasing, and in a few years they will doubtless not amount to as much as $1,800. That consideration influenced the committee to fix his salary at some reasonable sum, and they considered that $1,800 was about a fair compensation under all the circumstances.'

\*     \*     \*     \*     \*     \*     \*     \*     \*

"The President: 'I understand that the Commissioner of the Land Office receives a stipulated salary, as Keeper of the Chancery Records, under the existing law, of $500; and that all the fees are to go into the Treasury.'

"Mr. Daniel: 'It was the intention of the committee that all the fees should be paid into the Treasury, and he should receive the $1,800 as a substitute.' "

The petition that the then Land Commissioner referred to the Committee and which was mentioned to the Convention, was read to the Convention and is too lengthy to insert in this opinion, but we will insert one paragraph of it from page 1183 of Volume 2:

"I would respectfully suggest that the office may be continued in its present form, and the evil growing out of the influence of the Commissioner's decisions upon his emoluments corrected, by fixing a salary to be paid out of the Treasury of the State, the fees of register and examiner-general to be charged and received by the Commissioner, to be paid by him into the Treasury, after deducting necessary office expenses. This would also relieve the office from the embarrassment necessarily arising from the uncertain and unsettled state of his compensation."

The section was afterwards passed by the Convention fixing the salary at $2,000 although there was considerable debate as to whether or not the smallness of the business done did not justify an abolishment of the office.

No one can have any doubt after a reading of the debates that it was the intention not only of the members of the Convention but of the Land Commissioner himself that a salary of $2,000 was to be in lieu of all fees and the language of the section itself "Providing that the fees shall be turned into the State Treasury" gives this assurance. When the Convention of 1867 met, an effort to abolish the office was again renewed and the Convention at first voted to abolish the office (see proceedings Maryland Constitutional Convention 1867, page 486), but later reconsidered their action and continued the office at a salary reduced from $2,000 to $1,500 and added section 5 as it now stands, which simply made him the Historiographer of the State of Maryland.

By Chapter 66 of the Acts of 1874 the Commissioner was made the custodian of certain deed books and provision was made for him receiving and retaining fees for making copies and searches of the same. The provision of this Act, together with the Acts of 1853 and 1854 about which we have heretofore spoken, were codified as sections 6, 9, 11 and 13 of Article 54 of the Code of 1888.

Section 11 of the Code of 1888 which was the Act of 1853, which authorized the Commissioner to deduct as his other compensation 25% of all moneys received on account of the public lands the balance to be paid over to the State, was amended by the Act of 1894, Chapter 191, so as to require the commissioner to pay over all such moneys to the State.

The Act of 1900, Chapter 318, now codified as section 13 of Article 54 of Bagby's Code, and is the Act involved in this controversy, sought to restore to the Commissioner the right to this 25%, and is as follows:

> "All moneys payable to the State on account of the public lands and all fees shall be paid to the Commissioner of the Land Office, whose receipts therefor shall

be a good acquittance to the party paying the same; and the said Commissioner shall keep an accurate account of all such payments in a book kept for the purpose, and shall account semi-annually on the thirty-first day of March and the thirtieth day of September with the Comptroller, on oath, and pay over to the Treasurer all such moneys so received; and twenty-five per cent. of such moneys so received the Treasurer shall pay over on warrant of the Comptroller semi-annually to the Commissioner of the Land Office."

What more is this legislative enactment than an attempted amendment of a constitutional provision? The Constitution says in plain, unequivocal and express language that he shall make a semi-annual report of all the fees of his office, both as Commissioner of the Land Office, and as Keeper of the Chancery Records, to the Comptroller of the Treasury, and shall pay the same semi-annually into the treasury. The plain meaning of which can only be, that fees collected are not to be retained as any part of his compensation. Notwithstanding which the Legislature passes this statute, which, in effect, seeks to set aside this constitutional provision.

There is no question the Legislature can place additional duties upon the office, but it can not allow the occupants in the face of the express prohibition of the Constitution, to retain or recover any part of the fees, but they, as a whole shall go to and be retained by the State.

Being of the opinion that the Constitution expressly says the Commissioner shall not have any of the fees of his office but shall take a salary in lieu thereof, section 13 of Article 54, attempting to do that is null and void and of no effect.

*Order reversed and petition dismissed, with costs to the appellant.*