**GALL v. BRADY, Warden.**
No. 1176.

District Court, D. Maryland.
June 16, 1941.

CHESNUT, District Judge.

In this habeas corpus case the petitioner, Merrill L. Gall, seeks release from the Maryland Penitentiary where he is confined in consequence of sentences in the Criminal Court of Baltimore following a plea of guilty to an indictment charging burglary, and a conviction after trial on another charge of burglary, the sentences being five years in the Maryland Penitentiary to run concurrently. The ground on which this court is asked to release him is that his trial and conviction lacked due process of law within the requirement of the 14th Amendment to the Constitution of the United States, which provides that no person shall be deprived of life, liberty or property by a State without due process of law. His particular contention is that his trial lacked due process in that the Judge of the court did not assign counsel for his defense at public expense because he was not financially able to secure counsel.

A number of recent decisions of the Supreme Court of the United States have discussed the importance of the assistance of counsel for defendants in both federal and State criminal prosecutions in relation to the due process of law which is required in federal cases by the 5th and 6th Amendments and in State cases by the 14th Amendment. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. ——; Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. ——; Holiday v. Johnston, 61 S.Ct. 1015, 85 L.Ed. ——, May 26, 1941.

The jurisdiction of this court to release State prisoners confined contrary to provisions of the federal constitution has not been challenged in this case. Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed 969; Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543; Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406. Prior to a few years ago applications to this court for the exercise of that jurisdiction were comparatively rare; but in the last few months there have been a number of applications to this court for release of Maryland State prisoners, mostly on the ground that counsel were not assigned for their defense by the State Court. Practically all of these

G. Van Velsor Wolf, of Baltimore, Md., for petitioner.

Morton E. Rome, Asst. State's Atty., of Baltimore, Md., for respondent.

applications originated in letters written from the Maryland Penitentiary to a Judge of this court and are in the nature of very informal petitions for the writ of habeas corpus. Where the facts alleged by the petitioner obviously constituted no proper basis for the issuance of the writ, the court has declined to issue it in accordance with the well established practice in habeas corpus cases. See Walker v. Johnston, 312 U.S. 275, 284, 61 S.Ct. 574, 578, 85 L.Ed. ——, where, in the opinion by Mr. Justice Roberts, it is said:

"It will be observed that if, upon the face of the petition, it appears that the party is not entitled to the writ, the court may refuse to issue."

In the present case the informal application made by the petitioner indicated the possibility of probable cause for judicial inquiry in a habeas corpus case, and in view of the pendency of a number of similar informal applications, but inconclusive in their content, I followed the practice which I noted had been adopted in at least two recent cases in the Supreme Court (Walker v. Johnston, 312 U.S. 275, 61 S. Ct. 574, 85 L.Ed. ——; Holiday v. Johnston, 61 S.Ct. 1015, 85 L.Ed. —— ) of appointing a competent member of the Baltimore Bar, Mr. G. Van Velsor Wolf, to confer with the petitioner and prepare a formal petition if the facts seemed to justify it. Accordingly Mr. Wolf prepared a formal habeas corpus petition in accordance with the applicable procedure, see 28 U.S.C.A. §§ 451–466, on which the court signed a rule to show cause directed to the Warden of the Maryland Penitentiary. An answer was filed on behalf of the Warden and the case set for hearing on June 3, 1941. No traverse was filed on behalf of the petitioner but all parties treated the hearing as if a formal writ had been issued returnable on that day; and the case was heard on its merits on testimony submitted by both parties, the State of Maryland being represented by Mr. Morton E. Rome, Assistant State's Attorney of Baltimore City. The petitioner was brought into court by the Warden and he and all his witnesses were heard, together with all other relevant testimony submitted by the parties. From the testimony I find the following to be the facts of the case.

1. The petitioner was indicted in the Criminal Court of Baltimore on August 18, 1939 on two charges of burglary. Indictment No. 2998 charged in substance the burglary of the household of Addie M. Watkins on August 2, 1939, and the theft therefrom of some jewelry and money of the aggregate alleged value of about $400. Indictment No. 2999 charged the defendant with the burglary of the dwelling house of William S. Retchford on August 13, 1939, and the theft of a watch worth $20 and $2 in money. The defendant had been previously arrested on the charge, had been given a hearing before a police magistrate, and was in jail awaiting trial.

2. The Criminal Court of Baltimore is a court of record of general criminal jurisdiction. Maryland Constitution of 1867, Art. 4, § 30. For many years it has customarily sat in two separate divisions. See Jackson v. State, 87 Md. 191, 39 A. 504. It is presided over by one or more judges of the Supreme Bench of Baltimore City who are assigned thereto from time to time. Maryland Constitution, Art. 4. § 32.

3. The crime of burglary in Maryland is a common law felony, the penalty for which may be as much as 20 years in the Penitentiary. Md.Code 1939, Art. 27, § 32. But it is a matter of common knowledge that the ordinary charge of burglary for the purpose of theft and the theft of articles of comparatively small value do not generally entail severe sentences, at least in the absence of a bad prior criminal record. By Art. 27, § 37, burglary with explosives carries a maximum sentence of 40 years.

4. The docket entries of the two cases show that in both cases the defendant was arraigned on August 22, 1939, and pleaded not guilty; and that on August 29, 1939 the defendant was called for trial in case No. 2998 (which charged the theft of goods of greater value than in case No. 2999) the defendant pleaded not guilty and elected to be tried before the court without a jury, and on the same day was found guilty on the first count of the indictment and not guilty on the third count, and sentenced to five years in the Maryland Penitentiary concurrent with a similar term imposed in case No. 2999 in which the defendant pleaded guilty to the first count of the indictment.

5. The testimony in this case showed that when the defendant was arraigned on August 22, 1939 the court was presided over by the Honorable Eli Frank, and that the defendant then stated that he did not have counsel and asked the court to appoint

counsel. The defendant says that he was informed by the Judge that it was not customary to appoint counsel in cases of this nature. Judge Frank, testifying as a witness, said he did not recall the particular case which had occurred nearly two years ago, but that it is possible the traverser's statement may have been correct in that it was not customary to appoint counsel at public expense unless the charge was of such a serious nature as to indicate the importance or necessity of doing so; and that the defendant was financially unable to procure his own counsel. It further appeared, however, that Judge Frank did not make any final judicial determination whether counsel should be appointed in the case but, after some inquiry as to whether the defendant could not obtain counsel at his own expense or with the assistance of his close relatives, some of whom were then present, the trial of the case was postponed for ten days to enable the defendant to obtain counsel. Some effort was made by the relatives to obtain counsel without expense to themselves but was not successful. The defendant himself remained in jail in the absence of furnishing bail.

6. During August 1939 the courts of Baltimore City were in vacation and juries were not present; but in order to afford speedy trials to prisoners in jail who wished to have their cases tried by the court without a jury or wished to plead guilty, one of the judges of the Supreme Bench sat one or more days during the week to take pleas and have court trials without juries. It is well known that defendants in criminal cases cannot be forced to trial against their will during the general summer recess of the Criminal Court when the Court sits without a jury only for the prompt disposition of cases of defendants who elect to be tried without a jury. In the ordinary course of holding the court during vacation, the defendant's case was again put down for disposition if he desired it, on August 29, 1939, at which time the Honorable Samuel K. Dennis, Chief Judge of the Supreme Bench of Baltimore City, was presiding in the court. In the meantime the defendant had been given the usual opportunity to have witnesses summoned, and he had availed himself of this right by summoning one or more witnesses. He said that before being called in court before Judge Dennis he had a conversation with the captain of the jail guard, and asked him to request Judge Dennis to appoint counsel for him. The guard did not testify in the case, and there was no evidence to show that any such request made by the prisoner was ever communicated to the Judge or any of the court officials. Gall also testified that he had some further conversation with the jail guard which was to the effect that he was advised by the guard that ordinarily counsel were not assigned by the court for defendants in similar cases, and that it would probably be better for the defendant not to "irritate" the Judge by pressing an unusual request, but to take the matter as easy as he could. In any event, when Gall's case was called in due course before Judge Dennis he made no request to the Judge for the appointment of counsel, nor for any further postponement of the case, but voluntarily pleaded guilty to the lesser charge, and elected to go to trial on the other case before Judge Dennis without a jury. The petitioner said that he had had some preliminary talk of a rather vague and inconclusive nature about the time of trial with the clerk of the court in the presence of the Judge, but insofar as his testimony in this respect tended to contradict the docket entries, I do not find that it is of sufficient weight to do so. I find from the testimony of Judge Dennis that if Gall had requested him to assign counsel for his defense, one would have been appointed by the Judge, as that was his general if not invariable custom even in minor cases.

7. Maryland criminal law and procedure is peculiar, if not unique, in certain respects. By the Maryland Constitution, Art. 15, § 5, it is provided that "In the trial of all criminal cases, the jury shall be the Judges of Law, as well as of fact." By statute, Maryland Code (Art. 27, § 636; Dobbs v. State, 148 Md. 34, 47, 129 A. 275) it is further provided that in criminal cases the defendant shall have the sole right to elect whether his trial shall be by a jury or by a judge without a jury. The judicial statistics of the Criminal Court of Baltimore show that of the many thousand cases annually disposed of, 95% are on pleas of guilty or trials to the court instead of a jury. Of the cases actually tried a very small proportion only are tried with a jury, although the defendant is at his election absolutely entitled to a jury if he wishes it. Maryland Declaration of Rights, Art. 5. These unusual judicial statistics are doubtless attributable to the particular constitutional and statutory provisions, together

with the general reputation of the Baltimore City Judges for eminent judicial qualities. In practice, as the jury in criminal cases are made judges of the law as well as the fact, it very rarely occurs that the judge gives any advice or instruction to the jury with regard to the criminal law applicable to the particular case, and even in the few cases in which such instructions are given, they are not binding on the jury but merely advisory. It is perhaps not surprising therefore that many defendants in criminal cases, whether represented by counsel or not, prefer to have their cases tried before a judge without a jury with the realization that their legal defenses, if any, will receive more certain application by a judge than by a jury.

8. With respect to Gall's plea of guilty in case No. 2999, I find that this was voluntarily made by him and was not induced by any threats, promises or misrepresentations of any court officer. I also find that his election to plead guilty was based on his view that he would probably be convicted in that case if he did not plead guilty. He had had a preliminary hearing in both cases before a police magistrate and was familiar with the nature of the evidence which would be produced against him by the State. It appears that the principal issue was the matter of identification of the person who committed the burglaries, and that in case No. 2999 there were a number of witnesses against him; while in the other case there was apparently only one witness to identify him.

9. With respect to case No. 2998 in which the petitioner elected to be tried by Judge Dennis without a jury, I find that he made the election to waive the jury trial freely and voluntarily and without improper inducement from any source. I also find with respect to the latter case that the trial was in all respects fair and in conformity with due process, unless the failure of Judge Frank to appoint counsel for Gall when he was arraigned and requested it, or the failure of Judge Dennis to make such an appointment without request, constituted a lack of due process, which point of law will shortly be discussed.

10. I find also that the petitioner was not entirely unacquainted with Criminal Court procedure, as he had previously several times been indicted and tried or convicted in criminal cases in other courts, a number of the charges having been for burglary. The comparative severity of the sentences was doubtless due to the petitioner's bad prior criminal record.

■■ Coming now to the law of the case, the first question presented is whether, although the jurisdiction of the court in this case has not been challenged, nevertheless are there considerations which make it inadvisable to exercise the jurisdiction? It has long been the traditional policy and general practice of federal courts to avoid conflict wherever possible with state courts, and particularly this practice has been followed with respect to the administration of the criminal law by the state courts. Thus it is generally held in principle and in practice that the federal trial courts should not interfere with state criminal process, even on federal constitutional grounds, unless and until the defendant has exhausted his remedies in the courts of the state, with ultimate appeal if necessary to the Supreme Court of the United States. See Mooney v. Holohan, 294 U.S. 103, 115, 55 S.Ct. 340, 343, 79 L.Ed. 791, 98 A.L.R. 406, in which case the court, in a per curiam opinion, said:

"Orderly procedure, governed by principles we have repeatedly announced, requires that before this Court is asked to issue a writ of *habeas corpus,* in the case of a person held under a state commitment, recourse should be had to whatever judicial remedy afforded by the state may still remain open."

See also Gebhart v. Amrine, Warden, 10 Cir., 117 F.2d 995. But in this case I think it may well be determined that the petitioner has exhausted his remedies in the state courts. Some time after his sentences were imposed he successively, but unsuccessfully, applied for a writ of habeas corpus, and was given hearings by Judges Grason and Lawrence in the Circuit Court for Baltimore County, where the issuance of the writs was denied after hearing. He could not appeal to the Court of Appeals of Maryland because the statutes do not provide for such appeals in habeas corpus cases. Annapolis v. Howard, 80 Md. 244, 30 A. 910. He could have appealed from the original sentences in the Criminal Court of Baltimore to the Court of Appeals within ten days, but, being without counsel, it is not surprising that he did not do so even if he knew his rights in that respect. It is possible that he might also have had the right to appeal to the Supreme Court of the United States from the adverse disposition of the habeas corpus cases; but

without the benefit of advice of counsel in such matters it is not surprising that he did not do so. If, as a matter of law, his sentences were lacking in due process, in that he was not assigned counsel, I do not think his failure to appeal in the several cases should now debar consideration of the merits of the question as to due process. See Johnson v. Zerbst, supra.

On the facts above stated the question of law which emerges is this, is the conviction of a defendant in a Maryland criminal case without due process of law, within the meaning of the 14th Amendment to the Federal Constitution, where the charge is burglary with intent to steal property of the value of a few dollars or a few hundred dollars and without other aggravating circumstances, where the defendant voluntarily pleads guilty to one indictment and is tried on another indictment, but in both cases without the court's having voluntarily assigned counsel for his defense at public expense, and where the defendant is personally financially unable to obtain counsel?

As has been stated, the subject matter has recently been much discussed by the Supreme Court of the United States with respect to both federal and state prosecutions. Powell v. Alabama, and Smith v. O'Grady, supra, are the leading cases dealing with the subject in relation to state prosecutions, while Johnson v. Zerbst, Walker v. Johnston and Holiday v. Johnston, supra, relate to federal cases. Powell v. Alabama is the leading and most fully considered case upon the subject. It dealt with the well-known Scottsboro case. The opinion of Mr. Justice Sutherland contains a most interesting and elaborate review of the historical development of the right of defendants in criminal cases to be allowed the benefit of counsel. It was a well-known feature of the common law of criminal procedure in England until about a hundred years ago that a defendant charged with treason or felony was not entitled to be represented at all by counsel; but this most illiberal and unsound view according to modern standards was early rejected in this country, and the contrary provision, that defendants should be allowed counsel in all criminal cases, whether serious or trivial, was established by early constitutional provisions of most of the States, as well as in the 6th Amendment to the Federal Constitution. In the Alabama case the defendants were indicted for a most serious crime involving the possibility of capital punishment which was in fact imposed by the jury which convicted them. They were indicted and tried in a State far removed from their respective homes and forced to trial in a very short time after their arrest and without having had a reasonable opportunity to communicate with their friends and relatives or to obtain counsel for their defense. As determined by the Supreme Court, the somewhat general appointment of counsel by the court very shortly before the trial and without adequate time for preparation, did not constitute the kind of assistance of counsel that the defendants were entitled to within the concept of due process of law required by the 14th Amendment. It will be noted, however, that the case was one of the most serious nature; involving capital punishment; and there was not only inadequacy of appointment of counsel but also inadequacy of time allowed for preparation for trial. The Court held that the conviction was without due process of law within the 14th Amendment; but the opinion carefully limited the decision to the facts of the particular case, saying at page 71 of 287 U.S., at page 65 of 53 S.Ct., 77 L.Ed. 158, 84 A.L.R. 527:

"Whether this would be so in other criminal prosecutions, or under other circumstances, we need not determine. All that it is necessary now to decide, as we do decide, is that in a capital case, where the defendant is unable to employ counsel, and is incapable adequately of making his own defense because of ignorance, feeble-mindedness, illiteracy, or the like, it is the duty of the court, *whether requested or not*, to assign counsel for him as a necessary requisite of due process of law; and that duty is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case. * * * In a case such as this, whatever may be the rule in other cases, the right to have counsel appointed, when necessary, is a logical corollary from the constitutional right to be heard by counsel." (Italics supplied.)

Smith v. O'Grady was a habeas corpus case going to the United States Supreme Court from the Supreme Court of Nebraska and was decided on the pleadings without testimony having been taken. The petition had been dismissed by the Nebraska courts as insufficient to justify the issuance of the writ; but the Supreme Court held the petition on its face was sufficient to show a lack of due process under the 14th Amend-

510

ment. Among other things it was alleged that the defendant without benefit of counsel had been tricked into pleading guilty to *ordinary* burglary with the definite promise that his sentence would not exceed three years, whereas the indictment to which he actually pleaded guilty, without previous knowledge thereof, was *burglary with explosives* punishable in Nebraska by 20 years to life imprisonment, and he was sentenced to 20 years imprisonment. The case obviously did not deal solely with the absence of the appointment of counsel as constituting lack of due process.

Johnson v. Zerbst is the most important recent case dealing with the matter of counsel for defendants in *federal* criminal cases. In that case the petitioners for habeas corpus had been convicted after trial, at which they did not have the assistance of counsel, in the Eastern District of North Carolina on charges of counterfeiting, and had been sentenced to 4½ years imprisonment. They were confined in the federal penitentiary at Atlanta, Georgia, where they petitioned the federal judge of the district for the writ. Some testimony was taken in the case which apparently did not include that of the district judge who had presided at the trial. On the record before the Supreme Court it did not appear affirmatively that the defendants had requested the district judge personally to appoint counsel; but, according to the testimony of the petitioners, they had made the request of the United States District Attorney who informed them that in South Carolina the court did not appoint counsel unless the defendant was charged with a capital crime. Other facts that appeared were that after the defendants were sentenced they were remanded to jail where they asked the jailer to call a lawyer for them but were not permitted to contact one. A few days later they were taken to Atlanta and they therefore had no opportunity to confer with counsel, to move for a new trial or to take an appeal although about four months later they filed applications for appeal which were denied because filed too late. The district court denied their release on habeas corpus and the opinion was affirmed by the Circuit Court of Appeals for the 5th Circuit, 92 F.2d 748, but reversed by the Supreme Court of the United States. The opinion by Mr. Justice Black takes the view that the question was controlled by the provisions of the 6th Amendment to the federal constitution which provides that:

"In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence".

In the opinion, (304 U.S. page 467, 58 S. Ct. page 1024, 82 L.Ed. 1461) it was said:

"Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty. When this right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence. If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty."

Johnson v. Zerbst was approved and followed in Walker v. Johnston, although the facts were quite different, and the case was disposed of on pleadings and not on testimony. Mr. Justice Roberts (312 U.S. page 286, 61 S.Ct. page 579, 85 L.Ed. ——) said:

"If he did not voluntarily waive his right to counsel, or if he was deceived or coerced by the prosecutor into entering a guilty plea, he was deprived of a constitutional right."

The latest case on the subject in the Supreme Court, Holiday v. Johnston, Warden, May 26, 1941, again reiterates the importance of counsel for defendants in federal criminal cases, although that point was only one feature of the case which, as a whole, dealt with the matter of proper procedure in the trial of habeas corpus cases, and decided that where the petition is sufficient on its face and material issues of fact are raised by the pleadings, the disposition of the case must be by testimony taken in open court or by depositions subject to cross-examination, and may not properly be disposed of merely on affidavits. In that case the indictment charged robbery of a bank and jeopardy of lives of officials of the bank in the course of the robbery. The defendant had pleaded guilty to the indictment and was sentenced to 25 years imprisonment. His petition alleged that he was tried without the assistance of counsel, was ignorant of his right to have counsel although unable to pay for an attorney, and was not advised by the court he was entitled

to counsel and did not intelligently waive the right to have counsel. The court held the petition sufficient on its face, and remanded the case for further trial.

These three Supreme Court decisions relating to federal criminal procedure have placed a construction on the 6th Amendment which is perhaps broader than that theretofore commonly understood, in the light of the history of Anglo-Saxon criminal procedure. For many years prior to Johnson v. Zerbst it had been the uniform custom in this court, as doubtless in other federal district courts, to inquire from every defendant indicted for a federal crime, not represented by counsel of record, whether he desired the appointment of counsel, and if he did, to appoint counsel to assist him in the preparation for the trial of his case and the trial thereof, where it was found he was personally unable to obtain counsel; but it had not been here understood prior to Johnson v. Zerbst that either the 6th Amendment or the federal statutes absolutely required the appointment of counsel in every case as a jurisdictional requisite to the trial. In this connection it may be noted that 18 U.S.C. A. § 563, provides:

"563. Counsel and witnesses for persons indicted for *capital crimes.* Every person who is indicted of *treason or other capital crime,* shall be allowed to make his full defense by counsel learned in the law; and the court before which he is tried, or some judge thereof, shall immediately, upon his request, assign to him such counsel, not exceeding two, as he may desire, and they shall have free access to him at all seasonable hours. He shall be allowed, in his defense, to make any proof that he can produce by lawful witnesses, and shall have the like process of the court to compel his witnesses to appear at his trial, as is usually granted to compel witnesses to appear on behalf of the prosecution." (Italics supplied.)

In accordance with the doctrine of Johnson v. Zerbst, it has since then been the continued practice of this court, in *every* criminal case where the defendant is not represented by counsel, for the clerk, in the immediate presence of the judge on the bench and the defendant at the bar, to inquire whether the defendant has counsel and if not, whether he desires counsel to be appointed, and inform him of his right to have counsel appointed by the court if he is not able to obtain counsel. If, as a result of this interrogation at the bar of the court, the defendant does not expressly waive the appointment of counsel, a member of the bar is appointed to represent him and given sufficient time, in accordance with the nature of the case, to prepare for his trial; and if the defendant does waive the appointment of counsel, the entry to that effect is made by the clerk *as a docket entry* in the case, as recommended in Johnson v. Zerbst. If, after intelligently waiving counsel, the defendant pleads guilty, and the facts of the case, as stated to the court by the defendant or others, raise a substantial doubt of legal guilt, the defendant is advised that he may withdraw his plea of guilty and have counsel appointed to defend him on trial.

In Cundiff v. Nicholson, 4 Cir., 107 F. 2d 162, 163, the petitioner for habeas corpus had pleaded guilty to a federal criminal indictment, was sentenced and thereafter applied for release on the ground that counsel had not been assigned to him by the judge and that he had not waived his right to counsel. The charge was that of counterfeiting, and he was sentenced to three years imprisonment. In affirming the district court which dismissed the writ, the Circuit Court of Appeals in an opinion by Judge Parker said:

"Where an accused personally enters a plea of guilty to a crime whereof he stands charged, and does so understandingly, freely and voluntarily without asking the assistance of counsel, a waiver of the right to be represented by counsel may fairly be inferred."

The court thought and said that Johnson v. Zerbst was not a controlling authority in that situation because, as there said, the burden of proof was on the petitioner to show that he had not voluntarily waived the appointment of counsel.

My understanding of Johnson v. Zerbst is that in *all* federal criminal cases the court must appoint counsel for indigent defendants unless they expressly waive counsel, or do so impliedly by pleading guilty without asking for the prior appointment of counsel, and this despite the fact that the court has no fund to compensate counsel so appointed. In Powell v. Alabama, 287 U.S. page 73, 53 S.Ct. page 65, 77 L.Ed. 158, 84 A.L.R. 527, it was said:

"Attorneys are officers of the court, and are bound to render service when required by such an appointment."

512

As Johnson v. Zerbst has decided that in federal cases an accused must have the assistance of counsel as a jurisdictional prerequisite to a verdict of conviction unless he expressly or by implication waives the appointment of counsel, then if the same rule applies to State cases the petitioner here would be entitled to be released unless it should properly be found that he waived the appointment of counsel. As to the indictment to which he pleaded guilty on the first count, I hold that he did in legal effect waive the appointment of counsel because the facts show that the plea was voluntarily made without improper inducement. Cundiff v. Nicholson, supra, so holds. That is an imperative authority here. I do not regard the testimony as to what occurred before Judge Frank at the time of arraignment as controlling in this respect. Judge Frank evidently made no formal judicial determination that no counsel would be appointed for the defendant. The only judicial act that he then performed was to postpone the case to give the defendant an opportunity to obtain counsel. Subsequently when the defendant was brought before Judge Dennis for the trial of his case he could readily have had the trial further postponed by election of a jury trial if he still felt it important to have counsel. I do not find from the testimony that his election to plead guilty in the one case was induced by his failure to have counsel appointed for him. Furthermore it appears from Judge Dennis' testimony that if he had been requested by the defendant to appoint counsel, he would very probably have done so. But this request was not made. On the contrary, without making any request for postponement of the case or for the appointment of counsel, the defendant voluntarily elected to be tried then and there by Judge Dennis without a jury as to the one case, and pleaded guilty voluntarily as to the other. Under these circumstances I find that the plea of guilty was a waiver of the right to the appointment of counsel if it legally existed. As the sentence in the one case was not subject to impeachment on the ground of non-appointment of counsel, it results that the defendant is not now entitled to be released as to that sentence. And in this situation a determination of the invalidity of the sentence in the other case would not entitle the defendant to be now released. Holiday v. Johnston, supra; McNally v. Hill,

Warden, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238.

Even if this were not a sufficient ground for dismissing the writ, nevertheless I have concluded that it will also have to be dismissed because there was no constitutional invalidity in the concurrent sentence imposed in consequence of the conviction on the indictment on which the petitioner was tried by Judge Dennis. In the circumstances found, I have concluded that the trial was not without due process of law by reason of the non-appointment of counsel for the defendant. If the doctrine of Johnson v. Zerbst, which establishes the rule for *federal* cases, were fully applicable to *State* cases, this conclusion would not be sound; but after careful study of that decision of the Supreme Court I have reached the conclusion that it is not applicable in its full force and vigor to State prosecutions. Neither Powell v. Alabama nor Smith v. O'Grady constitute a precedent for the release of this petitioner; and indeed no federal case that has been called to my attention, after trial on the merits of a habeas corpus case, has finally resulted in a release of a State prisoner except in cases where the sentence has been a capital one or to life imprisonment, although, of course, this particular circumstance is not of itself controlling.

Johnson v. Zerbst, of course, authoritatively determines the applicable law with respect to the appointment of counsel for defendants in federal criminal cases but it is not of itself a controlling precedent with respect to state criminal cases because its doctrine is based on the court's interpretation of that phrase in the 6th Amendment to the federal constitution which provides that "in all criminal prosecutions, the accused shall *enjoy* the right * * * to have the Assistance of Counsel for his defence". In the opinion of Mr. Justice Black, 304 U.S. 463, 58 S.Ct. 1022, 82 L.Ed. 1461, it was said:

"The Sixth Amendment withholds from *federal* courts, *in all criminal proceedings,* the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel."

It will be noted that the phraseology of the comparable provision in the Maryland Declaration of Rights (Art. 21) is that:

"In all criminal prosecutions, every man hath a right * * * to be *allowed* counsel." (Italics above supplied.)

The contrast between the phraseology of the 6th Amendment and the Maryland Declaration of Rights is in the use of the word "enjoy" in the former and the word "allowed" in the latter. There is no Maryland decision which interprets the force and scope of the word "allowed" in the State's Declaration of Rights as equivalent to the interpretation put on the word "enjoy" by the Supreme Court in Johnson v. Zerbst; and the understanding of the Maryland provision as evidenced by the long continued practice in the criminal court of Baltimore differs from the doctrine of Johnson v. Zerbst. The 6th Amendment, as one of the first eight amendments to the Federal Constitution, is not specifically a limitation upon State action, and does not of itself determine the scope of the phrase "due process" in the 14th Amendment, except to the extent that there is implicit in the latter the concept of ordered liberty. Palko v. Connecticut, 302 U.S. 319, 324, 58 S.Ct. 149, 153, 82 L.Ed. 288. Powell v. Alabama, supra, is the Supreme Court decision which decides to what extent due process in the 14th Amendment is influenced by the 6th Amendment. The doctrine of Powell v. Alabama is succinctly summarized and clearly explained· in Mr. Justice Cardozo's opinion in the Palko case, by one short sentence, "The decision turned upon the fact that in the particular situation laid before us in the evidence the benefit of counsel was essential to the substance of a hearing." Undoubtedly it is fundamental to due process in Anglo-American law that there must always be a fair hearing after adequate notice. What will be sufficient to constitute a fair hearing must naturally depend to some extent upon the circumstances of the particular case. The circumstances may be such that the hearing could not be regarded as fair and therefore consistent with due process unless the defendant had adequate counsel and sufficient time for preparation for his defense. Representation by counsel is thus seen to be not of itself the ultimate indispensable incident of a fair trial but only one of the important circumstances which, associated with other facts, may show a lack of due process in a criminal prosecution.

In this connection Wilson v. Lanagan, Warden, 1 Cir., 99 F.2d 544, certiorari denied, 306 U.S. 634, 59 S.Ct. 486, 83 L.Ed. 1035, is a significant decision against the applicability of Johnson v. Zerbst to State cases. In the Wilson case the defendant was indicted for smuggling weapons into a Massachusetts jail, to aid a prisoner in escaping, and after trial without the benefit of counsel, was convicted and sentenced to a term of not less than nine years. Before his trial he asked that counsel be appointed for him but was informed by the trial judge that he could not assign counsel except in capital cases but that the sheriff would notify any counsel whom he wished to defend him, and would also notify any witnesses that he desired to be summoned. He applied to the federal district court of Massachusetts for a writ of habeas corpus for his release on the ground that he had been deprived of a fair trial under the due process clause of the 14th Amendment. The district court dismissed the writ and its action was affirmed by the Circuit Court of Appeals; and on Feb. 6, 1939, nearly nine months after the decision in Johnson v. Zerbst, the Supreme Court denied certiorari. Powell v. Alabama was distinguished in the opinion of the district judge, 19 F.Supp. 870, 873.

In a case of this character due consideration must be given to the well established public policy and practice of the State in the administration of its criminal law and procedure. As has been said, the Maryland Declaration of Rights provides that defendants in criminal cases shall be allowed the assistance of counsel. This fundamental constitutional declaration has been implemented by statutory law. Art. 26, § 7 of the Maryland Code provides that "and the said courts may likewise appoint counsel to defend any person in the trial of any criminal case in courts whenever in the judgment of the court in which any such case is pending a just regard for the rights of the accused requires it."

And section 8 provides that the County Commissioners of the several Counties, and Baltimore City, shall pay a fee not in excess of $100 for counsel so appointed by the court. In practice a limited fund of a few thousand dollars only is budgeted by Baltimore City for this item of public expense. It will be noted that the power of the court to appoint counsel at public expense is not by the statute limited to capital or even to the more serious classes of cases; but exists "whenever in the judgment of the court a just regard for the

rights of the accused requires it." The Legislature of Maryland has often in recent years been requested by interested parties to create the position of Public Defender in criminal cases, but no such legislation has been passed. It is, therefore, not the public policy of the State that *every* indigent defendant in every criminal case must be represented by counsel at public expense. On the contrary the matter is left to the judicial discretion of the trial judge in each case. It appears from the very full testimony of both Judges Dennis and Frank in this case that the policy of the State in this regard has been in practice for many years carried out by the judges of Baltimore City. In all capital cases where the defendant is indigent and in many other cases involving serious offenses, counsel are uniformly appointed by the court. In less serious cases counsel are also sometimes appointed by individual judges when in their judgment the interests of the defendant require it under the circumstances made known to the court. It would, however, be quite impracticable, according to the testimony of the judges, and unduly burdensome to the public, in the absence of a Public Defender, to appoint counsel in the case of every indigent defendant at public expense regardless of the nature of the case. Although it is the prime duty of courts both state and federal, to very carefully safeguard the constitutional rights of life, liberty and property, practical considerations as to the time of the court enter into the problem where the Criminal Court of Baltimore, in order to render speedy justice in criminal cases, must dispose of thousands of criminal cases each year.

■ The ultimate question in every such case as this must properly be whether, looking at the case as a whole, it has been disposed of in accordance with that concept of due process of law which is implicit in the 14th Amendment. The only circumstance here presented which could possibly be considered as tending to show lack of due process is the failure to appoint counsel. The case is entirely devoid of associated facts, such as appeared in Powell v. Alabama, and Smith v. O'Grady, on which the respective decisions were based. Here the petitioner was indicted in the City of his residence, was surrounded by his relatives, had the opportunity to summon witnesses for his defense, freely elected to be tried by the judge without a jury, could have secured a further postponement of his case if he had asked for it, and had a trial which in itself was in all respects fair, and indeed is criticized only because of the absence of counsel. Whether counsel should be appointed in any particular Maryland criminal case is by the local statute committed to the judicial (but presumably appealable) discretion of the judge before whom the defendant appears. There is nothing in this case to show that this discretion was abused by either judge who touched the case; nor does it appear that the circumstance of the petitioner's case in this respect is different from many hundreds of substantially similar cases which have been tried in the Criminal Court of Baltimore in recent years, in accordance with the practice prevailing for at least fifty years. It may be said here, as was said by District Judge Brewster in Wilson v. Lanagan, D.C., 19 F.Supp. 870, 872:

"If every criminal trial, held without the aid of a defendant's attorney, is a want of due process, then the established practice in this Commonwealth would have to be materially revised."

■ The writ of habeas corpus has been for more than 250 years the most effective single weapon of defense against the wrongful invasion of the personal right of liberty. Its scope of operation in the federal courts has been extended rather than contracted by Act of Congress. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Holiday v. Johnston, supra. In a proper case it may be used by the federal courts for release of State prisoners confined in violation of the federal constitution; but a due regard for the State's administration of its own criminal law properly precludes the exercise of such jurisdiction in a federal court until the prisoner has exhausted his remedies in the State Courts.

All that is here decided is that in the circumstances stated this petitioner has not been denied any federal constitutional right. The opportunity of a defendant in a criminal case, state or federal, to be heard by counsel is undoubtedly a very important one. No judge could properly refuse to hear counsel representing the defendant in a criminal case without violating due process of law. Where a defendant in a case of these circumstances has not obtained his own counsel, it is primar-

ily a judicial question to be determined by a Maryland judge under both the Maryland and federal constitutional law, whether the nature and circumstances of the defendant's case require the appointment of counsel for him at public expense. This question obviously must be decided in each case on its own facts and circumstances. The applicable Maryland statute does not limit the power and duty of the judge, in making an appointment of counsel, to capital cases or even to cases of felony. The grade of the crime is therefore obviously not controlling. Even though the crime charged does not involve a very serious penalty, other factors may very properly influence the court in appointing counsel; as for instance where the defendant is illiterate, ignorant and indigent and has been arrested in a locality far removed from his home and friends, and the nature of his case and his indicated defense clearly point to the need for the assistance of counsel in the preparation for his defense. It is sufficient to say that no such circumstances exist in the present case. The petition for the writ of habeas corpus is, therefore, *denied;* and the petitioner remanded to the custody of the State authorities.